1

2

3                                                                    O

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   HARRY MANSDORF, individually )   Case No. CV 12-01339 DDP (JCGx)
     and as Trustee of the         )
12   Mansdorf Family Trust,        )
                                    )
13                    Plaintiff,    )   **ORDER GRANTING MOTIONS TO DISMISS**
                                    )
14        v.                        )
                                    )
15   WALLACE PATRICK MORIARTY;      )
     RUFUS VON THALEN RHOADES;      )
16   SUSAN RHOADES; MICHELE         )
     GIACOMAZZA; KATHRYN GATTO;     )   [Dkt. No. 31, 43, 48, 49, 50]
17   JANICE McCLANAHAN; TIMOTHY     )
     B. SOTTILE; THOMAS             )
18   CACCIATORE; RICHARD PERCELL;   )
     WHITEBIRD, INC.; IMAGES N      )
19   THIS INC; THE WALKEMPLUE       )
     TRUST,                         )
20                                  )
                      Defendants.   )
21                                  )
     _____ )
22

23        Presently before the court are four motions to dismiss filed

24   by Defendants Janice McClanahan, Susan Rhoades, Rufus von Thalen

25   Rhoades, the Walkemplue Trust, Whitebird, Inc., and Richard

26   Percell.  Defendant Wallace Patrick Moriarty joins in the motion

27   filed be Defendants Suand and Rufus Rhoades and the Walkemplue

28   Trust.  Having considered the submissions of the parties and heard

1  oral argument, the court grants the motions and adopts the

2  following order.

3  **I.    Background**

4        Plaintiff's Second Amended Complaint ("SAC"), filed with leave

5  of the court, is difficult to follow.  Here follows a summation of

6  the relevant allegations of the SAC.

7        Plaintiff Harry Mansdorf ("Mansdorf") is the 91-year old

8  Trustee of the Mansdorf Family Trust (the "Family Trust").  (SAC ¶

9  8.)  Mansdorf succeeded his brother, Lee Mansdorf ("Lee"), as

10 Trustee upon Lee's death in 2003.  (Id.)

11       The SAC alleges that Lee discovered "something foul in his

12 business dealings" in 1981.  (SAC ¶ 21.)  Defendant Moriarty, whose

13 relationship to Mansdorf and the Family Trust is unclear, and who

14 may have used an alias, somehow took out loans on Family Trust

15 property, conveyed that property to straw buyers, and "skimmed

16 money from the transactions."  (SAC ¶¶ 9, 21, 25)  Defendent Rufus

17 von Thalen Rhoades ("Rhoades), who represented the Family Trust

18 "beginning in the 1980s" was somehow "involved," and "arranged for

19 a variety of agreements that were used . . to steal [Family] Trust

20 property."  (SAC ¶¶ 10, 21.)  Mansdorf alleges that "portions of

21 the scam were initiated and set into place beginning in the 1980s

22 and continuing through 2003."  (SAC ¶ 22.)

23       The SAC further alleges that in 1988 and 2003, someone named

24 Keith Card, who is not a defendant and may be deceased, transferred

25 unspecified real property to Defendant Janice McClanahan, Lee's

26 former girlfriend.  (SAC ¶¶ 23, 24, 26.)  The SAC does not explain

27 Keith Card's relationship to anyone, but asserts that he was a "key

28 player."  (SAC ¶ 23.)  The SAC does not appear to allege any

1  wrongdoing on McClanahan's part with respect to these transactions,
2  though the relevant parcels later became the focus of litigation in
3  state court.

4      In 1996, Lee, the Trustee of the Family Trust, had a heart
5  attack.  (SAC ¶ 27.)  While Lee was recovering, Defendant Rhoades
6  allegedly created an agreement, under which Rhoades would
7  "accommodate Lee Mansdorf's wishes to accept at least $750,000 from
8  DEFENDANT Whitebird [Inc.] for the Mansdorf's (sic) La Tuna Canyon
9  property."  (SAC ¶ 27.)  Under the agreement, Rhoades would forward
10 the sale proceeds to Defendant the Walkemplue Trust, to whom Lee
11 owed $850,000 in fees for legal services rendered by Rhoades.  (SAC
12 ¶ 27.)  Defendant Susan Rhoades, Rhoades' wife, was the Trustee of
13 the Walkemplue Trust.  (SAC ¶ 18.)  The SAC alleges that the
14 agreement was a "scheme to steal Mansdorf trust property," and that
15 Lee did not owe Rhoades or the Walkemplue Trust $850,000.  (SAC ¶
16 27.)  Rhoades also encouraged Lee to assert that Rhoades was Lee's
17 agent as a means of evading taxes.  (SAC ¶ 28.)

18     Defendant Richard Percell is "a representative" of Whitebird,
19 the company that bought the La Tuna Canyon property.  (SAC ¶ 15.)
20 Though Percell is not a licensed real estate broker, he acted as
21 agent for both the Family Trust and Whitebird for the 1996 La Tuna
22 Canyon property sale.  (SAC ¶ 18.)  Percell knew McClanahan, to
23 whom he had been introduced by Lee.  (SAC ¶ 31.)  Some of the 1996
24 La Tuna Canyon property sale parcels aomehow ended up in
25 McClanahan's name.  (SAC ¶ 31.)  Lee also had an agreement with
26 Defendant Image N' This, of which Percell is a director, to sell
27 certain La Tuna Canyon property, though it is unclear whether this
28 transaction ever occurred.  (SAC ¶ 31.)

1    In 2003, Mansdorf, allegedly at Rhoades' behest, asked

2 McClanahan to give back some of the La Tuna Canyon property "to

3 settle the death taxes for Lee." (SAC ¶ 37.) Either McClanahan,

4 Whitebird, or both then conveyed or attempted to convey La Tuna

5 Canyon property back to the Family Trust. (SAC ¶ 37-39.) In 2006,

6 however, Percell told McClanahan that Mansdorf sold the property

7 for a substantial some of money. (SAC ¶ 37.) McClanahan then sued

8 Mansdorf and obtained a $12 million default judgment. (SAC ¶ 37.)

9 The SAC alleges that McClanahan perjured herself and filed a false

10 deed to obtain the judgment. (SAC ¶ 37.)

11    Around this time, the SAC alleges that Mansdorf was being

12 financially and physically abused by Defendant Michele Giacomazza.

13 (SAC ¶ 39.) Giacomazza, whose relationship to Mansdorf is unclear,

14 allegedly was "attempting to steal" some of the parcels of property

15 at issue in McClanahan's suit against Mansdorf. (SAC ¶ 40.)

16    The SAC goes on to describe two "significant lawsuit[s}"

17 between Plaintiff Mansdorf and Giacomazza in 2008. The SAC alleges

18 that Mansdorf recovered some Malibu property from Giacomazza and

19 prevailed in an unlawful detainer case brought by Giacomazza. (SAC

20 ¶¶ 32, 33.) The SAC further alleges that "transactions were

21 revealed involving [Giacomazza] and his daughter, DEFENDANT Gatto,

22 where the same essential scam that was previously perpetrated by

23 DEFENDANT'S (sic) Moriarty, Rhoades, Percell, and Whitebird was

24 again being perpetrated." (SAC ¶ 33.) The SAC further asserts

25 that "the same key players . . . evidence the strongest link

26 between the two scams." (SAC ¶ 33.) The SAC also refers to

27 allegedly perjurious testimony given by McClanahan in connection

28 with the Giacommaza actions, which allegedly illustrate that

1  "McClanahan and her attorneys are knowingly and flagrantly

2  attempting to steal [Mansdorf's] home and throw him out on the

3  street just as DEFENDANT Giacomazza tried to do."  (SAC ¶ 33.)

4       In 2009, Mansdorf recovered documents which had been stolen

5  from the family home in 2004.  (SAC ¶ 62.)  The documents allegedly

6  indicate that Rhoades knew that Lee's former counsel was a business

7  associate of Moriarty.  (SAC ¶ 66.)

8       The SAC alleges a cause of action against all defendants for a

9  violation of the Racketeer Influenced and Corrupt Organization Act

10  ("RICO"), 18 U.S.C. § 1961 et seq.,[1] as well as several state law

11  causes of action.  McClanahan, Susan Rhoades, Rhoades, the

12  Walkemplue Trust, Whitebird, Inc., and Richard Percell now move to

13  dismiss the SAC.

14  **II.  Legal Standard**

15       A complaint will survive a motion to dismiss when it contains

16  "sufficient factual matter, accepted as true, to state a claim to

17  relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.

18  Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

19  544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court

20  must "accept as true all allegations of material fact and must

21  construe those facts in the light most favorable to the plaintiff."

22  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a

23  complaint need not include "detailed factual allegations," it must

24  offer "more than an unadorned, the-defendant-unlawfully-harmed-me

25  accusation."  Iqbal, 129 S. Ct. at 1949.  Conclusory allegations or

26  allegations that are no more than a statement of a legal conclusion

27

28  _____

   [1] The SAC does not identify whether the conduct alleged falls
   under 18 U.S.C. § 1962(a), (b), (c), or (d).

"are not entitled to the assumption of truth." <u>Id.</u> at 1950. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id.</u> at 1949 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id.</u> at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is a "context-specific" task, "requiring the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

**III. Discussion**

Though the SAC represents Plaintiff's third attempt to file an adequate pleading, it remains disorganized, convoluted, and cluttered by inflammatory language, irrelevancies, and "interesting aside[s]." The SAC fails to provide the "short and plain" statement of claims required under Federal Rule of Civil Procedure 8(a). <u>See</u> <u>Cafasso v. General Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1058-1059 (9th Cir. 2011).

Furthermore, though Plaintiff's RICO claim provides the only independent basis for this court's jurisdiction, the SAC's Third Cause of Action for RICO violation is nothing more than a bare recitation of the elements of the offense. <u>See</u> <u>Living Designs, Inc., v. E.I. Dupont de Nemours and Co.</u>, 431 F.3d 353, 361 (9th

1  Cir. 2005) (listing elements).  The RICO allegations do not

2  identify any conduct that constitutes racketeering activity, let

3  alone a pattern of such conduct.  Nor does the SAC appear to allege

4  any facts suggesting the existence of a coherent enterprise, the

5  structure or membership of any such enterprise, or how Plaintiff

6  was injured.

7       Finally, most, if not all, of the allegations of the FAC

8  appear to fall outside of the four-year statute of limitations for

9  RICO claims.  See Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir.

10 2001).  The limitations period "begins to run when a plaintiff

11 knows or should know of the injury which is the basis for the

12 action."  Living Designs, 431 F.3d at 365.  "The plaintiff is

13 deemed to have had constructive knowledge if it had enough

14 information to warrant an investigation which, if reasonably

15 diligent, would have led to discovery of the fraud."  Id. (Quoting

16 Pincay, 238 F.3d at 1110).  The only fact alleged within the four-

17 year claim period appears to be the 2009 rediscovery of certain

18 documents relating to real estate transactions made decades

19 earlier.  The SAC does not explain why that information, perhaps

20 obtained for the first time by Mansdorf in 2009, was not available

21 to Lee and the Family Trust as early as 1981, nor how Rhoades'

22 knowledge of a business relationship between Moriarty and Lee's

23 former counsel has any bearing on the RICO claim.

24      Given the obvious deficiencies of the SAC, Plaintiff's Third

25 Cause of Action for violation of RICO is dismissed, with leave to

26 amend.  Having dismissed Plaintiff's only federal claim, the court

27 declines to exercise supplemental jurisdiction over the remaining

28

1   state law claims.   28 U.S.C. §1367(a).   The court takes no position

2   on the viability of those claims at this juncture.

3   **IV.   Conclusion**

4        For the reasons stated above, Defendants' Motions to Dismiss

5   are GRANTED.   The Second Amended Complaint is DISMISSED, with leave

6   to amend.   Any amended complaint shall be filed within ten days of

7   the date of this order.

8

9   IT IS SO ORDERED.

10

11

12   Dated:July 25, 2012

                                DEAN D. PREGERSON

13                           United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28